STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LIZZIE DOTSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 15, 1981—Decided October 27, 1981.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*Stanley C. Van Ness*, Public Defender, for appellant (*Ellen Shiever*, Assistant Deputy Public Defender, of counsel and on the letter brief).

*James R. Zazzali*, Attorney General of New Jersey, for respondent (*John J. Degnan*, former Attorney General of New Jersey; *Anne C. Paskow*, Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

PRESSLER, J. A. D.

Defendant Lizzie Dotson appeals from an order of the Resentencing Panel denying her application for relief pursuant to *N.J.S.A.* 2C:1–1(d). We affirm that order but for reasons different from those relied on by the panel. The panel denied relief based on its conclusion that defendant had not met the statutory criterion of good cause for relief. We affirm but without reference to that criterion at all. At the time defendant made her application to the panel she was on parole. We are of the view that that circumstance deprived the Resentenc-

ing Panel of jurisdiction to entertain her application in the first instance.

The record shows that in March 1977 defendant was convicted by a jury of a charge of uttering a forged check and sentenced to a term of five to seven years to be served at the Correctional Institution for Women at Clinton. The following month she was convicted of a second charge of uttering a forged check and sentenced to another custodial term of five to seven years to run concurrent with the term to which she had been sentenced in March. Her separate applications for reduction of sentence were denied and each of the convictions was affirmed on direct appeal.

In February 1980 defendant was admitted to parole. On March 10, 1980 she applied to the Resentencing Panel for relief, claiming that the sentences imposed upon her on the forgery convictions exceeded the maximum imposable under the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 *et seq.* Defendant argues that the Code offense congruent to uttering a forged check is a fourth degree offense pursuant to *N.J.S.A.* 2C:21–1(b) and hence is punishable by a maximum custodial term of 18 months under *N.J.S.A.* 2C:43–6(a)(4). The State's position was that the congruent offense is a third degree crime pursuant to *N.J.S.A.* 2C:21–1(b) and hence is punishable by a maximum term of five years. *N.J.S.A.* 2C:43–6(a)(3).

The Resentencing Panel did not resolve this controversy, having concluded that irrespective of the congruent offense question, defendant had failed to demonstrate good cause for relief. In reaching this conclusion the panel relied on the facts that defendant had committed some 21 prior forgeries, that the record of her incarceration at Clinton demonstrated a rather poor institutional adjustment and, finally, that since she was on parole denial of relief could not significantly prejudice her. It is the last of these factors which concerns us here. We regard it as not constituting an element of the good cause complex but

rather as having a preclusionary effect on consideration of the application.

*N.J.S.A.* 2C:1–1(d)(2) provides in relevant portion as follows:

Any person . . . who has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date [of the Code] which exceeds the maximum established by the code for such an offense and who, on said effective date, has not had his sentence suspended or been paroled or discharged, may move to have his sentence reviewed by the sentencing court and the court may impose a new sentence, for good cause shown as though the person had been convicted under the code, except that no period of detention or supervision shall be increased as a result of such resentencing.

Thus this provision, in express terms, unequivocally denies the opportunity of sentence relief to a person who was discharged or paroled or who had had his sentence suspended as of the effective date of the Code, September 1, 1979, even if the original sentence was greater than the Code's maximum for the congruent offense. The evident intention of the Legislature in so doing was to make the discretionary resentencing relief available only to those actually incarcerated on the effective date of the Code. Its theory clearly was that even though a certain degree of vulnerability resultant from a specific custodial sentence may continue to attach after release from custody, nevertheless, it is the actual circumstance of custody which is sufficiently prejudicial to warrant post-Code rectification in accordance with Code sentencing standards.

We are aware that in articulating this determination the Legislature did apparently tie a defendant's right to make the resentencing application to his prisoner status as of the effective date of the Code. Thus, if the statutory provision were to be read literally, a defendant paroled or discharged after the effective date of the Code would have the right to thereafter apply for relief although one who was paroled or discharged immediately prior to the effective date of the Code would not. We are satisfied, however, that such a disparity in consequence, dependent upon the fortuity of the parole date, is not only without rational or logical support but also that it was entirely unintended by the Legislature.

It is our view that in its phrasing of the prisoner status condition, the Legislature meant to address not merely the date of custodial release but rather, and primarily, the chronological sequence between release from custody and the application for sentencing relief. It must, of course, be kept in mind that *N.J.S.A.* 2C:1–1(d) is a transitional provision. The essence of its substantive content at the time of its enactment was simply to permit persons still incarcerated on the effective date of the Code to apply for relief. Clearly, then, the operative concept from the outset was that incarceration was the *sina qua non* of the availability of such relief. We are further persuaded that the statutory provision must be construed in accordance with that operative concept not only as a matter of legislative pre-Code planning but also as a matter of post-Code administration. Construction of the statutory provision consistent with what we believe to be the clear legislative intention requires, therefore, that the circumstance of discharge, parole or suspension of sentence, whenever it occurs, precludes a subsequent application for relief under *N.J.S.A.* 2C:1–1(d).

Affirmed.